***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission adopts with minor modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement dated 5 February 2001 and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are correctly named and designated in the above caption. Defendant regularly employs three or more employees and is bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant.
3. Plaintiff's average weekly wage was $435.47, which yields a compensation rate of $290.33.
4. The date of onset of plaintiff's alleged occupational disease for his alleged bilateral shoulder condition is 8 January 1998.
5. The date of the specific traumatic incident to plaintiff's back is 5 January 1998.
6. Plaintiff was last employed by defendant on 21 January 1998.
7. Dr. Tsahakis found plaintiff to be at maximum medical improvement as of 17 February 1999.
8. In addition to the deposition transcripts and exhibits attached thereto, the parties stipulated into evidence in this matter a packet of stipulated medical records paginated 1-39.
 *********** MOTION
On 27 March 2002, plaintiff filed a motion before the Full Commission to include additional medical records as part of the evidentiary record. The records were designated as Exhibits 4A through 4U and had been received by both parties during the deposition testimony of Dr. Scott. Both parties had ample opportunity to question Dr. Scott about the medical notes at his deposition. Plaintiff's motion is hereby ALLOWED. Plaintiff's Exhibits 4A through 4U are made a part of the record herein.
 ***********
Based upon the greater weight of the competent and credible evidence of record in this matter, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff has a ninth-grade education and his work experience has consisted primarily of working in cabinet shops constructing and installing cabinets. Plaintiff last worked in any capacity on 19 January 1998.
2. On 5 January 1998, plaintiff injured his back while lifting a cabinet. Plaintiff and a coworker bent over to pick up a cabinet and when doing so, plaintiff felt a pop and immediate pain and burning in his back.
3. Plaintiff came under the treatment first of Dr. Jackson V. Scott, his family physician, and then upon referral by Dr. Scott, plaintiff began being treated by Dr. Paul J. Tsahakis, who performed a lateral lumbar 4-5 decompression and fusion/bone graft on 13 March 1998.
4. On 2 September 1998, Dr. Tsahakis released plaintiff to return to work with restrictions of no repetitive bending, lifting or twisting, and not lifting of greater than 35 pounds. Dr. Tsahakis expected plaintiff to reach maximum medical improvement for his back condition in early November 1998; however, after September 1998 plaintiff only saw Dr. Tsahakis on two occasions. Plaintiff returned to Dr. Tsahakis on 8 December 1998, at which time Dr. Tsahakis kept the previous physical limitations in place. On 17 February 1999 Dr. Tsahakis released plaintiff at maximum medical improvement and assigned a 25% permanent partial impairment rating to plaintiff's spine. Plaintiff has not returned to Dr. Tsahakis since February 1999.
5. At the time of the initial hearing before the Deputy Commissioner, plaintiff had not yet been rated or released by Dr. Tsahakis or by any other physician. Due to the timing of the hearing, plaintiff was not able to present evidence with respect to efforts made, if any, to return to suitable employment after 2 September 1998, or relating to his disability after 2 September 1998.
6. Plaintiff has not attempted to look for any work since September 1998, as he feels he has been unable to work in any capacity since that time. Plaintiff has had no vocational assessments or assistance in locating suitable employment since September 1998. Plaintiff is currently receiving social security disability benefits.
7. After plaintiff's release by Dr. Tsahakis, he continued to treat with his family physician, Dr. Scott, primarily for chronic pain, anxiety, and depression. Dr. Scott opined that plaintiff is "chronically disabled" and that he will be unable to return to work in any capacity, given plaintiff's work history, educational level, low intellect, and chronic pain. Plaintiff's chronic pain, relating primarily to his back condition, renders him unable to perform manual labor, yet plaintiff's intellect probably precludes him from other types of more sedentary employment.
8. As part of a disability determination evaluation, plaintiff was examined on 17 June 2000 by Psychological Associate Ernest Akpaka, M.A. Based on the results of the evaluation, Mr. Akpaka concluded that plaintiff has borderline intellectual abilities, and that his premorbid intellectual functioning is "within the borderline to low average range." As part of the same disability determination evaluation, Dr. Scott filled out a questionnaire regarding plaintiff's physical capabilities. He was of the opinion that plaintiff could neither stand nor walk during an 8 hour work day, he could only occasionally lift or carry up to a maximum of ten pounds, and he could not use his hands for simple grasping, pushing and pulling controls or fine manipulation. He also opined that plaintiff was unable to bend, squat, crawl, climb, reach above, stoop, crouch or kneel at all without pain. He further noted that plaintiff has frequent severe pain and is chronically disabled.
9. Plaintiff began treating with Dr. John M. Linster, a family physician, in June 2000. Plaintiff's treatment with Dr. Linster consisted of Dr. Linster's management of plaintiff's medication for his hypertension, diabetes, anxiety and chronic pain. Because plaintiff was continuing to experience severe back pain, Dr. Linster ordered an M.R.I. which revealed spurring, a disc bulge at L4-5, and epidural fibrosis at the site of plaintiff's earlier fusion surgery. Based upon the M.R.I. results, Dr. Linster referred plaintiff to Dr. Sivalingam Siva, a neurosurgeon, for evaluation regarding possible surgical intervention. Dr. Siva did not recommend surgery and did not wish to treat plaintiff and in fact failed to even produce a note documenting that he had seen plaintiff.
10. Dr. Linster then referred plaintiff for pain management. Plaintiff presented to Charlotte Pain Associates in July 2000, where the physician diagnosed plaintiff with failed back syndrome and recommended epidural steroid injections. Plaintiff had one injection that was not particularly effective; accordingly, he did not wish to continue with the injections. The pain management physician has also suggested the possibility of doing a Racz procedure. Plaintiff does not wish to pursue further pain management treatment apart from the treatment he receives from Dr. Linster.
11. Plaintiff was also evaluated in an independent medical evaluation by Dr. Mark Hartman in July 2001. Dr. Hartman, who is an orthopedic surgeon specializing in spines, also diagnosed failed back syndrome due to a nonunion of the surgical fusion, and expressed the opinion that plaintiff's complaints were consistent with the M.R.I. findings. Dr. Hartman did not recommend additional surgery, and felt that plaintiff would need continued pain management and the use of narcotics for the remainder of his life. Dr. Hartman opined that plaintiff would be restricted to light duty work only, and he assigned a 28% permanent partial impairment rating.
12. On 13 February 2001, plaintiff testified at the second hearing before the Deputy Commissioner that his back pain is constant, with numbness from his right lower back down his right leg to the floor. Plaintiff takes nine pain pills per day, and yet hurts constantly. He cannot sleep well, and is limited in his abilities at home to performing some light housework. He spends most of his time watching television, and has to lay down every hour and a half to two hours for approximately an hour before he can resume sitting or standing.
13. Plaintiff has medical conditions in addition to his back condition that impact upon his ability to return to work. Specifically, plaintiff suffers from the medical conditions of diabetes and hypertension, and has bilateral shoulder problems. Plaintiff has also sought treatment at a mental health clinic for problems relating to depression, anxiety, and anger.
14. Plaintiff continues to treat with Dr. Linster and Dr. Linster's physician's assistant for his various medical problems. Dr. Linster feels that plaintiff's symptoms of back pain are consistent with his M.R.I. findings, and believes that plaintiff is capable of performing only part-time, sedentary work, and that he is unable to return to his former occupation of cabinet builder and installer. Furthermore, Dr. Linster is of the opinion that the primary source of plaintiff's disability is his back condition. Dr. Linster further feels that although plaintiff may stabilize in the future, he is not likely to undergo any significant improvements under his current program. Dr. Linster now prescribes OxyContin, a narcotic, for plaintiff's chronic pain.
15. Even though plaintiff has been found to be at maximum medical improvement by his former treating physician, he remains and will remain unable to work in any capacity due to his failed back syndrome, combined with his other medical conditions. Based upon the totality of the medical evidence in this matter, particularly his chronic pain, plaintiff's failure to search for suitable employment after 2 September 1998 is justified.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident to his back on 5 January 1998. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff was temporarily totally disabled from 20 January 1998 through 2 September 1998. N.C. Gen. Stat. § 97-29.
3. Due to his age, educational background, intellectual ability, physical limitations and medical conditions, lack of transferable skills, limited vocational skills, and vocational experience, plaintiff has been totally disabled since 3 September 1998 and remains so disabled. Based upon all of the evidence in this matter, plaintiff remains totally disabled, even though he is at maximum medical improvement. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to receive ongoing medical compensation for all medical treatment related to his compensable injury. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
5. Defendant is not entitled to an apportionment in this matter.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendant shall pay plaintiff total disability compensation in the amount of $290.30 per week from 3 September 1998 and continuing until further order of the Commission. Such benefits that have accrued shall be paid in a lump sum.
2. Defendant shall continue to pay for all reasonably related medical treatment.
3. Plaintiff's counsel is entitled to a reasonable attorney's fee of 25% of the compensation awarded in Paragraph 1 above. Of the accrued compensation owed plaintiff, defendant shall deduct one-fourth and shall forward this directly to plaintiff's counsel. Regarding the ongoing compensation awarded herein to plaintiff, defendant shall forward every fourth compensation check directly to plaintiff's counsel of record.
4. Defendant shall bear the costs of this proceeding.
This the ___ day of February, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER